IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CHICAGO INSURANCE COMPANY
33 West Monroe Street
Chicago, Illinois 60603                                          Case No.

     Plaintiff,

vs.

ALEXANDER J. PIRES, JR.and CONLON, FRANTZ,
PHELAN & PIRES, LLP,
1818 N. Street, N.W.
Washington, D.C. 20036

     Defendants.

## DECLARATORY JUDGMENT COMPLAINT

  Chicago Insurance Company ("Chicago") by and through its attorney Caron, Constants &

Wilson, 201 Route 17 North, Rutherford, New Jersey 07070, as and for their complaint against

defendants Alexander J. Pires, Jr. and Conlon, Frantz, Phelan & Pires, LLP (hereinafter

"defendants") allege as follows:

### NATURE OF ACTION

  1.  This is a diversity action wherein plaintiff seeks a declaration of its rights and

obligation under an insurance contract that was issued to the defendants.

### PARTIES

  2.  At all times relevant, plaintiff Chicago Insurance Company ("Chicago") was and still

is a corporation organized under the laws of the State of Illinois with a principle place of business at

33 West Monroe Street, Chicago, Illinois 60603. Chicago is licensed to do business in the District of

Columbia.

  3.  At all times relevant, upon information and belief, defendant Alexander J. Pires, Jr.

("Pires") is a resident of the District of Columbia.

4.    At all times relevant, upon information and belief, defendant Conlon, Frantz, Phelan and Pires, LLP (the "Law Firm") is a limited liability partnership registered to do business in the District of Columbia with a principal place of business at 1818 N. Street, NW, Washington, D.C. 20036. Defendant Pires is a partner in the Law Firm and works in the District of Columbia.

## JURISDICTION

5.    This court has original subject matter jurisdiction pursuant to 28 U.S.C. §1332(a)(2) inasmuch as there is a diversity of citizenship between plaintiff and defendants and upon information and belief the amount in controversy exceeds $75,000, exclusive of interests and costs.

6.    Venue has been properly placed in the United States District Court for the District of Columbia pursuant to 28 U.S.C. §1391 inasmuch as the defendants, upon information and belief, reside in this district and have their principle place of business in this district.

## INTRODUCTION

7.    This is an action for declaratory judgment pursuant to 28 U.S.C. §2201 et seq. and is brought inter alia under Rule 57 of the Federal Rules of Civil Procedure, to determine the respective rights and obligations of the parties pursuant to a certain insurance contract issued by Chicago to the defendants.

## FACTUAL ALLEGATIONS

8.    On or about December 20, 2004, Jimmy K. Lee, Sr., William Denny Lee, Dale R. Lucas and Sammy Tant (hereinafter referred to as the "Underlying Plaintiffs") instituted  litigation against, inter alia, the defendants in the General Court of Justice, Superior Court Division, State of North Carolina, County of Johnston, Case No. 4CB 03623. A copy of the "Underlying Complaint" is

attached as Exhibit A.

9.    The Underlying Complaint alleges that defendant Pires and the Law Firm represented the Underlying Plaintiffs in a large-class action lawsuit against the American Tobacco Companies during which it is alleged that Pires and the Law Firm committed various acts of malpractice and defrauded the Underlying Plaintiffs.  The Underlying Complaint contains five causes of action.  The first count alleges breach of contract by the defendants.  The second, third and fourth counts allege fraud and constructive fraud by the defendants.    Count five of the Underlying Complaint alleges that Pires and the Law Firm committed various acts of malpractice.

10.    The Underlying Complaint seeks, inter alia, double damages, punitive damages as well as a request "that Pires and the Law Firm be ordered to disgorge to plaintiffs their attorneys' fees from the lawsuit against the tobacco companies."

11.    Upon information and belief, Pires and the Law Firm received $11 million in fees from the tobacco litigation.

12.    Chicago issued a lawyer's professional liability insurance policy No. LB-3019663 to the Law Firm for the policy period August 31, 2002 to August 31, 2003.  The reporting period for claims was amended to cover the period August 31, 2003 to unlimited.

13.    Chicago, inter alia, is providing a defense for the Underlying Complaint to Pires and the Law Firm subject to a reservation of rights.

14.    The insurance policy issued by Chicago contains the following definition of damages:

> "**Damages**" means compensatory judgments, settlements or awards but does not include punitive or exemplary damages, sanctions, fines or penalties assessed against directly against any **Insured**, the return of fees or other consideration paid to the **Insured** or that portion of any award or judgment caused by the trebling or multiplication of actual damages under a federal or state law.

15.    By letter dated April 20,2006, Gregg E. McDougal of Kilpatrick Stockton, counsel for the Underlying Plaintiffs, made demand upon Chicago to settle the Underlying Complaint for

$3.75 million.    The Underlying Plaintiffs allege that their settlement demand represents "disgorgement of attorneys' fees to Mr. Pires and the Law Firm" as damages for the breach of their fiduciary duties to the Underlying Plaintiffs.

16.    The defendants Pires and the Law Firm also contend that the disgorgement and/or return of fees is covered under the Chicago policy.

17.    Because disgorgement of fees does not satisfy the definition of "damages" contained in the Chicago policy issued to the defendants, Chicago owes no indemnity obligations to the defendants for the disgorgement/return of fees.

18.    Upon information and belief, the trial of the Underlying Complaint is presently scheduled for August 2006.

## FIRST CLAIM FOR RELIEF
### (Declaratory Judgment)

19.    Chicago repeats and realleges each and every allegation contained in paragraphs 1 through 18 of the complaint as if set forth herein at length.

20.    Defendants have demanded that Chicago honor its contractual obligations under the insurance policy issued to defendants and provide coverage to the defendants for any disgorgement of fees under the insurance policy.

21.    Contrary to the assertions of the defendants, the disgorgement and/or return of fees does not satisfy the definition of "damages" under the insurance policies.  Thus, Chicago has no obligation to indemnify the defendants with respect to the return or disgorgement of any fees.

22.    Based upon the forgoing, there is an actual and justiciable controversy in a sum exceeding $75,000 as to the rights and obligations of the parties under the Chicago policy and Chicago is entitled to a declaration pursuant to 28 U.S.C. §2201 that Chicago is not obligated to indemnify defendants Pires and the Law Firm with respect to the claim brought against them by the

Underlying Plaintiffs for the disgorgement and/or return of fees.

    Wherefore, Chicago Insurance Company demands the following:

    1.    A declaration that the Chicago policy issued to defendants provides no coverage for the claim of the underlying plaintiffs for the disgorgement and/or return of fees.

    2.    Award of costs, attorneys' fees and such other and further relief as the court may deem just and proper.

June 13, 2006

                    Respectfully submitted:

By: _____
           Alfred C. Constants III, D.C. Bar #250092
           CARON, CONSTANTS & WILSON
           Attorneys for Plaintiff
           Chicago Insurance Company
           201 Route 17 North, 5th Floor
           Rutherford, NJ 07070
           (201) 507-3683

**EXHIBIT A**

STATE OF NORTH CAROLINA

COUNTY OF JOHNSTON

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
NO. 04-CVS-

01 DEC 20 PH 3:04
JOHNSTON CO., C.S.C.    **4CV  03623**

JIMMY K. LEE, SR., WILLIAM
DENNY LEE, DALE R. LUCAS, and
SAMMY TANT,

        Plaintiffs,

v.

ALEXANDER J. PIRES, JR.;
CONLON, FRANTZ, PHELAN &
PIRES, LLP; D. LAMAR DELOACH;
GUY W. HALE; WILLIAM HYMAN;
[D. KEITH PARRISH] and JAMES R.
SMITH,

        Defendants.

*dismissed Voluntarily by π because couldn't get personal jurisdiction*

<u>COMPLAINT</u>
[COMPL]

**JURY TRIAL DEMANDED**

NOW COME the Plaintiffs, Jimmy Lee, Denny Lee, Dale Lucas, and Sammy Tant (collectively "Plaintiffs"), complaining of the Defendants, and allege and say:

## PARTIES

1.    Plaintiff Jimmy K. Lee, Sr. ("Jimmy Lee") is a resident of Johnston County, North Carolina.

2.    Plaintiff William "Denny" Lee ("Denny Lee") is a resident of Harnett County, North Carolina.

3.    Plaintiff Dale R. Lucas ("Lucas") is a resident of Harnett County, North Carolina.

4.    Plaintiff Sammy Tant ("Tant") is a resident of Nash County, North Carolina.

5.    Defendant Alexander J. Pires, Jr. ("Pires"), upon information and belief, is a resident of Washington, D.C.

6.      Defendant Conlon, Frantz, Phelan and Pires, LLP (the "Law Firm"), upon information and belief, is a limited liability partnership registered to do business in the District of Columbia. The Law Firm is liable for the acts and omissions of its principals, agents, and employees, including Defendants Pires and the Law Firm 's associates, as alleged herein.

7.      Defendant D. Lamar DeLoach ("DeLoach"), upon information and belief, is a resident of Statesboro, Georgia.

8.      Defendant Guy W. Hale ("Hale"), upon information and belief, is a resident of Alachua, Florida.

9.      Defendant William G. Hyman ("Hyman"), upon information and belief, is a resident of Conway, South Carolina.

10.     Defendant D. Keith Parrish ("Parrish"), upon information and belief, is a resident of Johnston County, North Carolina.

11.     Defendant James R. Smith ("Smith"), upon information and belief, is a resident of the State of Tennessee.

12.     Defendants are subject to the jurisdiction of this Court.

## FACTUAL ALLEGATIONS

13.     Plaintiffs are tobacco farmers and quota holders. They have been farming tobacco for most of their lives.

14.     Defendant Pires is a lawyer who has appeared in courts around the country, including North Carolina. Pires concentrates his legal practice on representing plaintiffs in large class-action lawsuits. Pires holds himself out as having special skill and knowledge in the area of class-action lawsuits, and lawsuits involving farmers. Upon information and belief, Pires is a partner in the Law Firm.

2

15.    Upon information and belief, sometime during 1999, Defendant Pires learned of an ongoing dispute between tobacco farmers and the major American tobacco companies. Thereafter, Pires began searching for ways to bring a lawsuit on behalf of tobacco farmers.

16.    During the late summer and fall of 1999, Defendant Pires traveled to North Carolina on several occasions, where he met Plaintiffs and talked with them about the possibility of bringing a lawsuit on behalf of them and other tobacco farmers.

17.    Defendant Pires entered into an attorney-client relationship with Plaintiff Jimmy Lee.

18.    Defendant Pires entered into an attorney-client relationship with Plaintiff William Denny Lee.

19.    Defendant Pires entered into an attorney-client relationship with Plaintiff Dale Lucas.

20.    Defendant Pires entered into an attorney-client relationship with Plaintiff Sammy Tant.

21.    Plaintiffs each signed fee agreements with Pires and the Law Firm.

22.    Plaintiffs assisted Pires with structuring, organizing, formulating and starting the lawsuit.

23.    Defendant Pires told Plaintiffs that he wanted to bring their claims as part of a class-action lawsuit on behalf of tobacco farmers.

24.    Pires asked Plaintiffs to be Class Representatives/Lead Plaintiffs in a class-action against the tobacco companies and they agreed to do so.

25.    Pires told Plaintiffs that, in a class-action, Class Representatives/Lead Plaintiffs often are financially rewarded for their efforts.

3

26.    As Class Representatives/Lead Plaintiffs, Plaintiffs actively participated in helping Pires and the Law Firm's associates assemble evidence for the case and persuade other farmers to join the case as named plaintiffs.

27.    Plaintiffs worked closely with Pires to organize meetings with tobacco farmers. Plaintiffs set up meetings, contacted the press, paid for expenses, made the arrangements and put together the details.

28.    Plaintiffs helped Pires sign up thousands of farmers as plaintiffs in the case.

29.    The draft complaints that Pires and the Law Firm drafted listed Plaintiffs, along with Defendants DeLoach, Hyman, Hale, and Parrish, as Class Representatives/Lead Plaintiffs. Plaintiffs assisted Pires and the Law Firm in revising the draft complaints.

30.    Plaintiffs also worked closely with Pires and the Law Firm's associates to develop emotional written testimonials about Plaintiffs' experiences as tobacco farmers and their dealings with the tobacco companies. Pires planned to include the testimonials from each of the Class Representatives/Lead Plaintiffs within the class action complaint.

31.    On February 16, 2000, the day Pires planned to file the class action complaint in federal district court in Washington, D.C., Plaintiffs traveled to Washington, D.C. to meet with Pires and to appear at the news conference that Pires had scheduled for after the filing of the complaint.

32.    At that meeting, Pires told Plaintiffs that he wanted the Class Representatives/Lead Plaintiffs living in North Carolina to drop out as named Class Representatives/Lead Plaintiffs.

33.    The reason Pires gave Plaintiffs for why he wanted them to drop out was that he needed there to be complete diversity of citizenship between the class representatives and the defendant tobacco companies.

4

34.     Plaintiffs were surprised at Pires' suggestion. They told Pires and the Law Firm's associates their concern that removing them as Class Representatives/Lead Plaintiffs might make it more difficult to persuade their colleagues in North Carolina to continue to support the case. Moreover, Plaintiffs already had incurred significant expenses as a result of the meetings they set up to enlist class members, and had also incurred substantial risk to their livelihoods that came from taking a high-profile role in the case. Plaintiffs wanted to be sure that they would be treated equally with the other Class Representatives/Lead Plaintiffs in the distribution of any incentive award that resulted from the case.

35.     In response to Plaintiffs' concerns, Defendant Pires and the Law Firm's associates drafted and presented to Plaintiffs, at the February 16 meeting, an agreement ("the Agreement") that stated as follows:

> The purpose of this agreement is to set out the understanding between the various Quota Holders and Growers who organized and formulated and started the lawsuit against *Phillip Morris et. al.* entitled DeLoach v. Phillip Morris and Alexander J. Pires, Jr. Counsel.

> In September 1999, Mr. Pires was approached by various leaders from the Flue-Cured states, namely Lamar DeLoach, Keith Parrish, and Greg Hyman. Later that group was joined by Jimmy Lee, Denny Lee, Sammy Tant, and Dale Lucas, again from the Flue-Cured states. These seven (7) gentlemen worked with counsel and organized in Florida, Georgia, North Carolina, South Carolina, and Virginia meetings with tobacco farmers.

> We went to approximately 15 meetings. The lead farmers set up all the meetings, contacted the press, paid for all expenses, made all the arrangements and put together the details. The result was by December, there were an excess of 2,000 retainer agreements signed by quota holders and growers directly resulting from their efforts.

> In the original drafts of the Complaint, they were each listed as Class-Representative/Lead Plaintiffs. At the request of Mr. Pires, those living in North Carolina, (Parrish/Lee/Lee/Lucas/Tant) were asked to drop out as Lead Plaintiffs – so that this case might be filed as a diversity suit against the Defendants, some of which are from North Carolina.

5

They agreed, for the good of the group, to drop out as Lead Plaintiffs, but to remain in the case as long as their rights were protected. It is the understanding of all that the original group of seven (7) would be treated the same – as it is understood that in many, but not all class action cases, Lead Plaintiffs are often rewarded for their effort, etc.

In January, the group turned their eyes toward the burly states (Tennessee/Kentucky) and begin working with Jimmy Smith who set-up meetings in Tennessee, who is coordinating the meetings in Kentucky scheduled for the first two weeks in March, and who became a Lead Plaintiff/Class Representative. He is the 8th member of the lead group.

In sum, the purpose of this agreement is to foster good feelings and trust between the group of eight (8) lead Quota Holders/Growers, who have put this case together and to insure that Mr. Pires protects their rights equally.

36.     The Agreement was signed by all of the Plaintiffs, as well as by Defendants DeLoach, Hyman, Parrish, Smith, Hale, and Pires. A copy of the Agreement is attached hereto as **Exhibit A**.

37.     At the time the Agreement was signed, Pires and the associates at the Law Firm were in an attorney-client relationship with Plaintiff Jimmy Lee.

38.     At the time the Agreement was signed, Pires and the associates at the Law Firm were in an attorney-client relationship with Plaintiff William Denny Lee.

39.     At the time the Agreement was signed, Pires and the associates at the Law Firm were in an attorney-client relationship with Plaintiff Dale Lucas.

40.     At the time the Agreement was signed, Pires and the associates at the Law Firm were in an attorney-client relationship with Plaintiff Sammy Tant.

41.     Pires represented to all signatories that the Agreement was valid and enforceable.

42.     In entering into the Agreement, the parties stated their intention, among other things, to ensure that all of the parties would be treated equally, and that they would divide equally among themselves any incentive compensation awarded to the named

6

Class Representatives. Plaintiffs were told by Pires and the Law Firm's associates that taking their names off the list of Class Representatives/Lead Plaintiffs on the class action complaint was done purely for tactical reasons "so that this case might be filed as a diversity suit."

43.     Plaintiffs were assured by all Defendants that they would be treated the same as the remaining Class Representatives/Lead Plaintiffs in the litigation and as to any incentive award.

44.     On or about February 16, 2000, Defendant Pires filed the class-action lawsuit on behalf of Plaintiffs and thousands of other named tobacco farmers who had signed on as clients of Pires and the Law Firm, in the United States District Court for the District of Columbia against Phillip Morris Incorporated, R.J. Reynolds Tobacco Company, Brown and Williamson Tobacco Corporation, and Lorillard Tobacco Company (the "Tobacco Companies"). The class action complaint asserted claims against the Tobacco Companies for violation of the Sherman Antitrust Act, 15 U.S.C. § 2, breach of fiduciary duty, and fraud.

45.     Pursuant to the Agreement, Plaintiffs were not listed on the class action complaint as Class Representatives/Lead Plaintiffs, but the written testimonials they had prepared were included and quoted at length in the complaint, as were those of the other Class Representatives/Lead Plaintiffs. Plaintiffs also attended the news conference that Pires had scheduled along with the other Class Representatives/Lead Plaintiffs.

46.     After filing the complaint, Defendants continued to communicate with Plaintiffs as Class Representatives/Lead Plaintiffs, and Plaintiffs continued to assist Pires with the class action lawsuit by, among other things, identifying witnesses and obtaining evidence.

47.     On or about September 7, 2000, without telling Plaintiffs, Defendant Pires signed and filed an amended complaint that formally re-listed Defendant Parrish

7

(who, like Plaintiffs, was and is a citizen of North Carolina) as one of the Class Representatives/Lead Plaintiffs.

48.    Defendant Pires never advised Plaintiffs that he was adding Defendant Parrish to the pleadings as a Class Representative/Lead Plaintiff and he never offered to add Plaintiffs as Class Representatives/Lead Plaintiffs.

49.    When Plaintiffs found out that Parrish had been re-listed as a Class Representative/Lead Plaintiff, they asked Pires why he had done this. Pires told them that he wanted to have someone from North Carolina as a Class Representative/Lead Plaintiff.

50.    Plaintiffs asked Pires that they be re-listed as well, but Pires and the Law Firm's associates told Plaintiffs that it would slow down the case.

51.    Pires and the Law Firm's associates assured Plaintiffs once again that their individual interests were adequately protected by the Agreement.

52.    On or about November 30, 2000, the Honorable Gladys Kessler, District Court Judge for the District of Columbia, entered an Order transferring the case to the Middle District of North Carolina.

53.    In April 2003, the class action lawsuit entered mediation, and several months later, in August 2003, a televised announcement was made that the case had settled for $242,000,000.00.

54.    Thereafter, Defendant Pires and the Law Firm filed a pleading with the court requesting that more than $150,000,000.00 in attorneys' fees be awarded to Plaintiffs' counsel. On or about December 19, 2003, The Honorable William L. Osteen, Sr. awarded plaintiffs' co-lead counsel $70,821,329.48 in attorneys' fees.

55.    On or about January 6, 2004, Defendant Pires and the Law Firm filed a pleading with the court requesting incentive compensation for the Class

8

Representatives/Lead Plaintiffs.  The issue of incentive compensation for Class Representatives/Lead Plaintiffs was addressed at a hearing that took place on or about August 25, 2004.

56.    Pires was  aware at the time of the August 25, 2004 hearing that Plaintiffs believed they were entitled to an equal portion of any incentive award. He knew that the larger the incentive award for the Defendant Class Representatives/Lead Plaintiffs was, the greater his personal exposure would be under the Agreement.   At the hearing, Defendant Pires was unprepared and made a perfunctory effort to obtain an incentive award for the Defendant Class Representatives/Lead Plaintiffs.  Moreover, he made no attempt to obtain any such award for Plaintiffs.

57.    In spite of his obligations under the Agreement and his professional duties to Plaintiffs, Defendant Pires never attempted to amend the complaint to include Plaintiffs formally as Class Representatives/Lead Plaintiffs, never argued to the court that Plaintiffs should receive compensation for their efforts, never presented any evidence in support of such compensation for Plaintiffs, and failed to represent the interests of Plaintiffs equally with those of the other Class Representatives/Lead Plaintiffs.

58.    On or about September 8, 2004, in a Supplemental Memorandum in Support of Class Representatives' Petition for Incentive Awards that he filed with the Middle District of North Carolina, Defendant Pires once again failed to do anything to assert Plaintiffs' interests.    Instead, Pires requested an award for the Class Representatives/Lead Plaintiffs, including Defendants DeLoach, Hyman, Hale, Parrish and Smith equal to three percent (3%) of the common settlement fund, or approximately $7,260,000.00.

59.    Pires disclosed to the court in the Supplemental Memorandum that these Defendants had entered into a separate agreement, with Defendant Pires' knowledge and participation, in which they agreed to divide up any incentive award in a way that would compensate certain of Defendants more highly than others.    This second

9

agreement is in direct contradiction to the Agreement with Plaintiffs, and fails to designate any portion of the award for Plaintiffs.

60.    As of the date this Complaint was filed, the amount of the incentive awards for named class representatives was still pending before Judge Osteen.

61.    In communications with Plaintiffs, Defendants have stated clearly their intention not to honor their obligations to Plaintiffs under the Agreement.

62.    Defendant Parrish told Plaintiffs that they were "on their own" in terms of the settlement.

63.    Defendant Pires told Plaintiff Jimmy Lee that the Agreement, which Pires drafted, is "not worth the paper it's written on."

64.    Pires also told Plaintiff Jimmy Lee that it would be "ludicrous" for the Agreement to be honored.

65.    Pires never told Plaintiffs that he no longer represented them as their attorney, nor did he ever disclose to them that he had material conflicts of interest in representing them.

66.    Plaintiffs have suffered substantial damages as a proximate result of Defendants' actions as set forth above.

### FIRST CLAIM FOR RELIEF
### (Breach of Contract Against All Defendants)

67.    The allegations contained in all preceding paragraphs of this Complaint are re-alleged and incorporated by reference as if fully set forth herein.

68.    In entering into the Agreement, Defendants represented to Plaintiffs that the Agreement was intended to ensure that Pires would represent their interests equally.

10

69.   In entering into the Agreement, the Defendants represented to Plaintiffs that Plaintiffs and Defendants DeLoach, Parrish, Hyman, Hale, and Smith would be treated the same with respect to any incentive award to Class Representatives/Lead Plaintiffs.

70.   Defendants, in communications with Plaintiffs as described herein and in statements made publicly, including statements to the United States District Court and filings with that court, have failed to honor the Agreement, and have not treated all of the signatories equally.

71.   In addition, Defendants, in communications with Plaintiffs as described herein and in statements made publicly, including statements to the United States District Court, have announced their intention not to honor the Agreement, not to treat all of the original plaintiffs the same, and not to treat the parties equally regarding proposed incentive awards for Class Representatives/Lead Plaintiffs.

72.   In violation of the Agreement, Defendants DeLoach, Hale, Hyman, Parrish, and Smith entered into a separate agreement, with Pires' assistance, knowledge and counsel, to divide the incentive award entirely among themselves.

73.   Such actions by Defendants are in disregard of their obligations under the Agreement.   Defendants' actions and their stated intention to not adhere to the provisions of the Agreement, and to keep any incentive award entirely for themselves, constitute breaches of the Agreement.

74.   As a proximate cause of Defendants' breach, Plaintiffs have been damaged in an amount in excess of $10,000.00.

### SECOND CLAIM FOR RELIEF
(Fraudulent Practice Against Defendant Pires and the Law Firm)

75.   The allegations contained in all preceding paragraphs of this Complaint are re-alleged and incorporated by reference as if fully set forth herein.

76.    Pires and the Law Firm, and their co-counsel, were awarded more than seventy million dollars ($70,000,000.00) for their participation in the class-action lawsuit against the tobacco companies.

77.    As Plaintiffs' attorneys, Defendants Pires and the Law Firm owed a fiduciary duty to Plaintiffs to act with the utmost openness, fairness, and honesty.  In their dealings with Plaintiffs, as described above, Defendants Pires and the Law Firm failed to act openly, fairly, and honestly with Plaintiffs, in that, among other things, they (i) represented to Plaintiffs at the time they were trying to get them to sign the Agreement that the Agreement was enforceable, but then represented to them that it was unenforceable (ii) failed to inform Plaintiffs that they had re-listed Defendant Parrish as a Class Representative/Lead Plaintiff, (iii) failed to provide Plaintiffs with an equal opportunity to be re-listed as Class Representatives/Lead Plaintiffs; (iv) failed to tell Plaintiffs that their interests could be adversely affected by not being named or added as Class Representatives/Lead Plaintiffs; (v) failed to disclose to Plaintiffs that they had material conflicts of interest in representing and advising them; and (vi) telling Plaintiffs that they would be treated equally when Defendants Pires and the Law Firm had no intention of doing so.

78.    These actions of Defendants Pires and the Law Firm constitute fraudulent practice, for which Plaintiffs are entitled to damages in an amount to be determined at trial.  Such damages should be doubled, or alternatively, punitive damages should be awarded.  Furthermore, Defendants Pires and the Law Firm should be required to disgorge to Plaintiffs the attorneys' fees they have been awarded in the lawsuit against the tobacco companies.

### THIRD CLAIM FOR RELIEF
### (Constructive Fraud Against All Defendants)

79.    The allegations contained in all preceding paragraphs of this Complaint are re-alleged and incorporated by reference as if fully set forth herein.

80.    As described more fully above, Defendants were in a relationship of special trust and confidence with Plaintiffs.

81.    These Defendants used their positions of trust and confidence to bring about Plaintiffs' active participation in recruiting class members, and to induce Plaintiffs to sign the Agreement yet remain active participants to the class action lawsuit, and to continue to assist Defendants in connection with the lawsuit, all to the detriment of Plaintiffs and for the benefit of the Defendants.

82.    Defendants Pires and the Law Firm benefited from Plaintiffs' efforts in support of the lawsuit, including signing up class members, Plaintiffs' preparation of personal narratives for the class action complaint, and Plaintiffs' continued aid in prosecuting the class action lawsuit. The lawsuit ultimately resulted in the award of over $70 million in attorneys' fees to class counsel, including Pires and the Law Firm.

83.    Defendants misled Plaintiffs by failing to advise them that not being listed formally as Class Representatives/Lead Plaintiffs would keep them from sharing in an incentive award, or that the Defendants DeLoach, Hyman, Hale, Parrish, and Smith had decided to divide the incentive award among themselves without any share going to Plaintiffs. Defendants have benefited from their wrongful conduct at the expense of Plaintiffs.

84.    As a proximate result of the constructive fraud of these Defendants, Plaintiffs were damaged and are entitled to recover of Defendants, jointly and severally, damages (including general, consequential, incidental, and special damages) in an amount in excess of $10,000, plus interest as allowed by law. Plaintiffs should also be awarded punitive damages due to Defendants' willful, intentional, and malicious actions.

13

## FOURTH CLAIM FOR RELIEF
### (Fraud Against All Defendants)

85.    The allegations contained in all preceding paragraphs of this Complaint are re-alleged and incorporated by reference as if fully set forth herein.

86.    Upon information and belief, Defendants Pires, DeLoach, Hyman, Hale, Parrish and Smith, at the time they entered into the Agreement, had no intention of performing their obligations under the Agreement.

87.    The Defendants represented to Plaintiffs at the time they entered into the Agreement that they intended to honor and abide by it and that the Agreement would ensure that they would be treated equally with all of the other Class Representatives/Lead Plaintiffs

88.    Plaintiffs reasonably, justifiably, and actually relied to their detriment on the above-described material misrepresentations by Defendants, in entering into the Agreement and agreeing not to be listed as Class Representatives/Lead Plaintiffs on the class action pleadings.

89.    The acts and omissions of Defendants as described in this Complaint, and specifically including without limitation the misrepresentations of material fact set forth in paragraphs 42, 43, 63, and 87 above, constitute fraud.

90.    As a proximate result of the fraud of Defendants, Plaintiffs were damaged and are entitled to recover of Defendants, jointly and severally, damages (including general, consequential, incidental, and special damages) in an amount in excess of $10,000, plus interest as allowed by law.  Plaintiffs should also be awarded punitive damages due to Defendants' willful, intentional, and malicious actions.

### FIFTH CLAIM FOR RELIEF
#### (Malpractice of Defendants Pires and Conlon, Frantz, Phalen and Pires, LLP)

91.    The allegations contained in all preceding paragraphs of this Complaint are re-alleged and incorporated by reference as if fully set forth herein.

92.    Defendant Pires and the associates at the Law Firm rendered legal services to Plaintiffs and were in an attorney-client relationship with each of the Plaintiffs.

93.    As a result of their relationship with Plaintiffs, Defendants Pires and the Law Firm owed Plaintiffs a duty of loyalty, a duty to use their best judgment in the handling of all matters entrusted to them, and a duty to exercise reasonable and ordinary care and diligence in the use of their skill and in the application of their knowledge to their clients' matter.

94.    Defendant Pires and the Law Firm, including the law firm's associates, held themselves out as having special knowledge and skill in the type of legal services rendered by virtue of special experience with large class action cases representing farmers. As a result, Defendants Pires and the Law Firm had a duty to Plaintiffs to render legal services in accordance with the standard of practice exercised by attorneys with similar experience.

95.    The actions of Defendants Pires and the Law Firm's associates described above constitute violations of their professional obligations to Plaintiffs and professional malpractice. Defendants acts of malpractice include:

    (i) representing to Plaintiffs at the time they signed the Agreement, which was drafted by Pires and the Law Firm, that it was enforceable, and then subsequently representing to Plaintiffs that it was unenforceable.

    (ii) advising Plaintiffs that they needed to drop out as Class Representatives/Lead Plaintiffs so that the case could be filed as a diversity suit so that federal jurisdiction would exist;

15

(iii) failing to disclose material conflicts of interest between Plaintiffs and themselves, and between Plaintiffs and Defendants Parrish, DeLoach, Hyman, Hale, and Smith, and continuing to represent Plaintiffs despite those material conflicts of interest;

(iv) failing to treat all signatories to the Agreement equally;

(v) failing to make any effort to re-list Plaintiffs as Class Representatives/Lead Plaintiffs so that they could share in an incentive award from the court;

(vi) re-listing Defendant Parrish as a Class Representative/Lead Plaintiff, and thereby permitting him to participate in the incentive award, without telling Plaintiffs;

(vii) failing to make any effort to obtain an incentive award for Plaintiffs;

(viii) failing to prepare adequately for the incentive award hearing or to argue appropriately for an incentive award for the Class Representatives/Lead Plaintiffs;

(ix) failing to advocate effectively for incentive awards for Plaintiffs due to their material conflicts of interest;

(x) assisting Defendants DeLoach, Parrish, Hyman, Hale and Smith in entering into a separate agreement to divide an incentive award, while ignoring Defendants' obligations to Plaintiffs under the Agreement;

(xi) never telling Plaintiffs that they were no longer representing them; and

(xii) advising Plaintiffs that they would be treated equally when Defendants Pires and the Law Firm had no intention of doing so.

16

96.     Through these actions, Defendant Pires and the Law Firm willfully, wantonly, and recklessly disregarded and breached their duties to Plaintiffs and the standards of care applicable to them for the legal services detailed herein.

97.     As a proximate result of Defendants' negligence, Plaintiffs have been damaged in an amount in excess of $10,000.00. The Court should also require Defendants Pires and the Law Firm to pay punitive damages to Plaintiffs due to their willful, wanton, and reckless actions as alleged herein. Furthermore, Pires and the Law Firm should be ordered to disgorge to Plaintiffs their attorneys' fees from the lawsuit against the tobacco companies due to their willful, wanton, and reckless acts of malpractice as alleged herein.

WHEREFORE, Plaintiffs respectfully pray the court as follows:

1.      That Plaintiffs have and recover of Defendants compensatory damages in an amount in excess of $10,000.00, as shall be proved at trial, together with pre- and post-judgment interest as allowed by law;

2.      That Plaintiffs be awarded double damages for Defendants Pires' and the Law Firm's fraudulent practice;

3.      That Plaintiffs have and recover of Defendants Pires and the Law Firm punitive damages for their fraudulent practice and their willful, wanton, and reckless malpractice;

4.      That Pires and the Law Firm be ordered to disgorge to Plaintiffs their attorneys' fees from the lawsuit against the tobacco companies due to their fraudulent practice and their willful, wanton, and reckless malpractice.

5.      That Plaintiffs have and recover of Defendants Pires, the Law Firm, DeLoach, Hyman, Hale, Parrish and Smith punitive damages in an appropriate amount for their fraudulent conduct;

17

6.    That a constructive trust be imposed for Plaintiffs' benefit upon all proceeds, benefits and profits realized by Defendants as a result of the class action lawsuit that are currently held by or for the benefit of Defendants or any entity or capacity in which the Defendants maintain control or a financial interest.

7.    That an equitable lien be placed on any amounts disbursed to any Defendant, whether in the form of an attorneys' fee award or class representative incentive award.

8.    That Defendants be taxed with the costs of this action, including reasonable attorneys' fees;

9.    For a trial by jury on all issues so triable; and

10.    For such other and further relief as the Court deems just and proper.

This the 20ᵗʰ day of December, 2004.

ARMSTRONG & ARMSTRONG, P.A.

Lamar Armstrong
State Bar No. 9679
602 South Third Street
Smithfield, NC 27577
Tel.: 919-934-1575
Fax: 919-934-1846

KILPATRICK STOCKTON LLP

Gregg E. McDougal
State Bar No. 27290
W. Swain Wood
State Bar No. 32037
3737 Glenwood Avenue, Suite 400
Raleigh, NC 27612
Tel: 919-420-1700
Fax: 919-420-1800

18

Richard J. Keshian
State Bar No. 10681
Laura A. Greer
State Bar No. 31555
1001 West Fourth Street
Winston-Salem, NC 27101
Tel: 336 607-7300
Fax: 336-734-7500

EXHIBIT
A

## AGREEMENT

The purpose of this agreement is to set out the understanding between the various Quota Holders and Growers who organized and formulated and started the lawsuit against *Philip Morris et.al.* entitled <u>DeLoach v. Philip Morris</u> and Alexander J. Pires, Jr. Counsel.

In September 1999, Mr. Pires was approached by various leaders from the Flue-Cured states namely Lamar DeLoach, Keith Parrish, and Greg Hyman. Later that group was joined by Jimmy Lee, Denny Lee, Sammy Tant, and Dale Lucas, again from the Flue-Cured states. These seven (7) gentlemen worked with counsel and organized in Florida, Georgia, North Carolina, South Carolina, and Virginia meetings with tobacco farmers.

We went to approximately 15 meetings. The lead farmers set-up all the meetings, contacted the press, paid for all expenses, made all the arrangements and put together the details. The result was by December, there were an excess of 2,000 retainer agreements signed by quota holders and growers directly resulting from their efforts.

In the original drafts of the Complaint, they were each listed as Class-Representative/Lead Plaintiffs. At the request of Mr. Pires, those living in North Carolina, (Parrish/Lee/Lee/Lucas/Tant) were asked to drop out as Lead Plaintiffs—so that this case might be filed as a diversity suit against the Defendants, some of which are from North Carolina.

They agreed, for the good of the group, to drop out as Lead Plaintiffs, but to remain in the case as long as their rights were protected. It is the understanding of all that the original group of seven (7) would be treated the same—as it is understood that in many, but not all class action cases, Lead Plaintiffs are often rewarded for their effort, etc.

In January, the group turned their eyes toward the burly states (Tennessee/Kentucky) and begin working with Jimmy Smith who set-up meetings in Tennessee, who is coordinating the meetings in Kentucky scheduled for the first two weeks in March, and who became a Lead Plaintiff/Class Representative. He is the 8th member of the lead group.

In sum, the purpose of this agreement is to foster good feelings and trust between the group of eight (8) lead Quota Holders/Growers, who have put this case together and to insure that Mr. Pires protects their rights equally.

Lamar DeLoach

Keith Parrish

Greg Hyman

Sammy Tant

02/16/00

Jimmy Lee

Denny Lee

Jimmy Smith

Dale Lucas

Alexander J. Pires, Jr.